ARKANSAS GAZETTE COMPANY and Max Brantley *v.*
Thomas L. GOODWIN, et al.

90-217                                          . 801 S.W.2d 284

Supreme Court of Arkansas
Opinion delivered December 21, 1990

*Rose Law Firm, A Professional Association,* by: *Phillip Carroll,* for appellant.

*Perroni, Rauls, Looney & Barnes, P.A.,* by: *Stanley D. Rauls,* for appellee.

JACK HOLT, JR., Chief Justice. This is a Freedom of Information Act case. Ark. Code Ann. § 25-19-105 (1987). The issue is whether the records of an investigation of Steve Clark, conducted by the Arkansas State Police and other investigative agencies, should be closed to the public. The trial court held that the investigative file was closed to the public until after Clark's trial. It specifically found in its order that continued publicity would impair the court's obligation to provide Clark with a fair and impartial trial by a jury. We agree.

On July 11, 1990, appellant Max Brantley, Assistant Managing Editor of the *Arkansas Gazette*, requested the investigative file concerning Steve Clark from appellee Colonel Tommy Goodwin, Director of the Arkansas State Police, and appellee

Christopher C. Piazza, Prosecuting Attorney for the Sixth Judicial District. The request was initially denied by Colonel Goodwin. Brantley was subsequently notified by the prosecuting attorney's office that it would make the requested records available on July 13, 1990, at 10 a.m. for inspection at the prosecutor's office. Criminal charges were filed against Clark, and he, simultaneously, filed a motion seeking to have the investigative file protected from disclosure and ordered sealed. Appellant, Arkansas Gazette Company, was informed by the prosecutor's office that it intended to fully support Clark's motion.

As a result, the appellants thereafter filed their petition for judicial review, requesting that the trial court conduct a hearing to determine if the investigative files of the state police were public records subject to public disclosure under the Arkansas Freedom of Information Act (FOIA). A hearing was conducted on the appellants' petition on July 12, and the trial court denied the petition. The court's written order of July 13 recited in part that all investigative agency files regarding Clark were to be closed until a trial of Clark was held. The appellants filed a petition to modify, asking the court to modify its order to conform to the action which was actually announced by the court from the bench at the conclusion of the hearing on the appellants' petition for review on July 12. The petition to modify was denied.

The appellants argue the investigative file is a public record under the FOIA and there are no applicable exceptions which would prevent its disclosure. They further contend the trial court erred in expanding its order to close the files of all investigative agencies, including the legislative audit, until after Clark's trial.

The appellants' petition for review was assigned to Judge Perry V. Whitmore, who was also the assigned trial judge in Clark's criminal prosecution. On July 12, the parties agreed to consider both the appellants' petition for review and Clark's motion in the criminal proceeding. The record reflects the parties argued their respective positions before Judge Whitmore primarily on the basis of whether or not the release of the investigative file would deny Clark's due process rights to a fair trial. The appellants contended at the hearing that the public interest in having access to the file outweighed Clark's right to a fair trial.

Appellee Piazza relied upon Rule 3.8 of the Model Rules of Professional Conduct (1985), for the proposition that, as a prosecutor, he could not disseminate the requested file to the appellants. The trial court denied the appellants' petition on the basis that continued publicity would impair its obligation to provide Clark a fair trial by an impartial jury.

The Due Process Clause of the fourteenth amendment guarantees the right of a fair trial by a panel of impartial jurors to the criminally accused in state criminal prosecutions. *Duncan v. Louisiana*, 391 U.S. 145 (1968). If, due to pretrial publicity, an impartial jury cannot be seated to try a defendant, his right to a fair trial is violated. *Anderson v. State*, 278 Ark. 171, 644 S.W.2d 278 (1983); *Swindler v. State*, 267 Ark. 418, 592 S.W.2d 91 (1979).

■ In this case, the high level of publicity and media attention threatened to interfere with Clark's right to a fair trial. In *Gannett Co. v. DePasquale*, 443 U.S. 368 (1979), the Court stated that, in order to safeguard the due process rights of the accused, a trial judge has an affirmative duty to minimize the effects of prejudicial pretrial publicity, and he may take protective measures even when they are not strictly and inescapably necessary. *See also Sheppared v. Maxwell*, 384 U.S. 333 (1966).

In discharging his duty, the trial court weighed Clark's constitutional right to a fair trial against the public's right to access to public records as provided for in the FOIA and, in exercising his authority under Ark. Code Ann. § 29-19-105(b)(8) (Supp. 1989), concluded a reasonable protective measure was warranted by the circumstances: the closing of the investigation files of the state police and the files of all investigative agencies, including the legislative audit.

■ This court has previously noted, "[i]f the question is whether a defendant can or cannot receive a fair trial, as required by the fourteenth amendment to the United States Constitution, then conflicting law must give way to a defendant's right to due process." *Anderson v. State, supra.* Suffice it to say, FOIA must give way in this instance to "due process."

Affirmed.

TURNER and PRICE, JJ., concur.

GLAZE, J., dissents.

OTIS H. TURNER, Justice, concurring. I concur in the result reached by the majority of this court. However, I write to offer an additional compelling reason for affirmance.

This court is committed to the proposition that openness in government is an essential ingredient in a democratic society. The legislative act which furthers that objective, the Freedom of Information Act, Ark. Code Ann. §§ 25-19-101 through 25-19-107 (1987 & Supp. 1989), is commendable and should be liberally construed to give full effect to its purpose. *McCambridge v. City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989). When, however, any proceeding under the guise of freedom of information would likely hinder or impede in any manner the constitutional right of an accused to a fair trial, *see Anderson* v. *State*, 278 Ark. 171, 644 S.W.2d 278 (1983), then the provisions of the Freedom of Information Act must give way.

Admittedly, it is the task of the media not only to report information gathered from all available sources but also to comment upon that information by way of editorials and opinion columns and frequently, the editorializing is not limited to the section reserved for editorial comment. This is a fact of life that all who qualify as "public figures" understand and live with.

In this case, the constitutional right to a fair trial collides head to head with the public's right to know through the statutory provisions of the Freedom of Information Act.

Anyone who has had an opportunity to review a law-enforcement agency's investigation file knows that in many instances that file contains a hodgepodge of tips, rumors, suppositions, and hearsay — much of which may already have been or ultimately will be, determined to have no basis in fact. Such is the very nature of an "investigation" file. Moreover, much of the information, though possibly having the ring of truth, will also be found inadmissible at any trial of the case on its merits.

Assume for the moment that the investigation file is opened to the media. There can be little doubt that *all* of the contents of the file will be subjected to total exposure and complete scrutiny by the media, both in news reports and editorial columns, with little or no fear of accountability under the First Amendment

protection afforded the media.

On the other hand, assume that the attorney for the accused may well have in his file a good and sufficient explanation or defense for each of the items of media interest contained in the investigation file. Yet, the Code of Professional Conduct Rule 3.6 prevents him from trying the defendant's case in the media. The defendant is therefore faced with the worst-case scenario — having his or her file, with *all* inferences pointing to guilt, presented to the public, without rebuttal, at a time when he or she is entitled to the full and complete benefit of the constitutionally guaranteed presumption of innocence.

One may then ask why the *defendant*, absent his attorney, cannot refute all of the information reported from the investigation file. On the other hand, in preservation of his constitutional rights, why should he have to make such an explanation other than at trial? The answer is, of course, that he should not.

An individual's *constitutional* right to a fair trial dictates that the public's *legislatively-enacted* right to know be subordinated for so long as the constitutional rights of the individual may be in jeopardy.

DALE PRICE, Justice, concurring. The result reached by the majority is correct. It does not, however, address other issues argued on appeal concerning the Arkansas Freedom of Information Act (FOIA). The first issue concerns the application of the FOIA to the investigative file of the state police. In order for a record to be subject to the FOIA and available to the public, it must be possessed by an entity covered by the act, fall within the act's definition of a public record, and not be exempted by the act or other statutes. *Legislative Joint Auditing Committee* v. *Woosley*, 291 Ark. 89, 722 S.W.2d 581 (1987). This court has said on many occasions that the FOIA should be broadly construed in favor of disclosure, and exemptions construed narrowly in order to counterbalance the self-protective instincts of the governmental bureaucracy. *McCambridge* v. *City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989).

In the instant case the appellees contend the investigative file at issue is not a public record. The state police investigative file clearly constitutes a public record under the FOIA and as defined

in Ark. Code Ann. § 25-19-103(1) (1987). In the alternative, the appellees argue the file falls within two of the exemptions enumerated in Ark. Code Ann. § 25-19-105(b)(6)(8) (Supp. 1989). I agree.

The law enforcement exemption in § 25-19-105(b)(6) provides that "undisclosed investigations by law enforcement agencies of suspected criminal activity" are not subject to public inspection. This exemption has been construed by this court in several opinions. In *City of Fayetteville* v. *Rose*, 294 Ark. 468, 743 S.W.2d 817 (1988), we held that information contained in investigations conducted by the City of Fayetteville police and fire departments was not undisclosed and thus not exempt from release. We said:

> There was no 'undisclosed investigation.' Everyone knew about it. The Fire and Police Departments of Fayetteville had finished their investigation. The federal Bureau of Alcohol, Tobacco, and Fire Arms had investigated the matter, turned its report over to the U.S. attorney's office, and a federal grand jury had returned an indictment. No reading of the Freedom of Information Act consistent with our decisions could support a finding that there was an 'undisclosed investigation' involved. Therefore, the records held by the fire and police departments are subject to disclosure under the Freedom of Information Act.

We stated in *McCambridge* v. *City of Little Rock, supra*, that "[t]he only purpose of the exemption, as written, is to prevent interference with ongoing investigations." We held there that photographs of the crime scene and a pathologist's photograph made in connection with a police investigation were to be released in accordance with the FOIA. We also held the police file was subject to release despite the fact that it allegedly contained statements from confidential informants.

The investigative files at issue in *City of Fayetteville* and *McCambridge* had to do with completed police investigations. The opposite situation was presented in *Martin* v. *Musteen, City of Rogers and Clinger*, 303 Ark. 656, 799 S.W.2d 540 (1990). Pinson (Martin was Pinson's attorney and the appellant) was charged with drug violations and his attorney requested the police investigation file with respect to the charges against Pinson.

Following the police chief's refusal to release the file, Pinson's attorney brought action pursuant to the FOIA. At the hearing, the police chief characterized the investigation as an "ongoing" one. The prosecutor testified that Pinson's case was part of a larger investigation and that it would continue for some time. We held that if a law enforcement investigation remained open and ongoing, it was meant to be protected as undisclosed under the FOIA.

In the case at bar the appellants contend the state police investigative file was not exempt under the law enforcement exemption. I disagree. It is my opinion that a law enforcement agency's file is not disclosed merely because the press has published articles concerning the matter or everyone knows about it. If an investigative agency discloses a file, it obviously is not exempt under the FOIA. It also follows that the file does not necessarily become disclosed after a criminal conviction or acquittal. The file may still contain information not subject to disclosure under the FOIA.

In my view, an accused must have been acquitted or have exhausted the appeal process before a law enforcement agency's file is subject to the public's inspection and then only after the court determines whether there are other matters requiring protection from disclosure. These matters include, but are not limited to, (1) the right of another person to a fair trial, (2) privacy rights of individuals which should be protected, (3) the identification of confidential informants, (4) law enforcement techniques and procedures, (5) the safety of law enforcement personnel, and (6) the names of persons interviewed by police so that others will not be deterred from cooperating with police in the future. See J. Watkins, The Arkansas Freedom of Information Act (1988). The investigative file of a law enforcement agency would then be subject to disclosure under the FOIA following the above procedure.

In construing the law enforcement exemption, it is my opinion this court has erroneously applied an "ongoing" investigation distinction. The statutory exemption clearly provides that "undisclosed" investigations are not subject to public inspection. "Undisclosed" means what it says; that is, the contents of investigations which have not been made known by the law

enforcement agency. Accordingly, to the extent that our holdings in *City of Fayetteville* and *McCambridge* are in conflict with this concurring opinion, I would overrule them. I would, therefore, hold that the law enforcement exemption prevented public inspection of the state police investigative file in this instance.

The next question to be addressed is whether or not the state police investigative file is exempt from disclosure under Ark. Code Ann. § 25-19-105(b)(8), which provides that "documents which are protected from disclosure by order or rule of court" are not subject to public inspection. I would also hold the file is exempt from disclosure pursuant to the above. Clark filed a motion in the criminal proceeding to have the file protected and ordered sealed. This was done simultaneously with the filing of criminal charges, and a hearing was conducted on both Clark's motion and the appellants' petition for review. An order was entered on July 13 which closed the police investigative file and all other investigative agency files from the public. This order clearly is the type contemplated by the General Assembly in its enactment of § 25-19-105(b)(8), and the state police investigative file is, therefore, not subject to disclosure pursuant to this exemption in my opinion.

The last issue concerns whether or not the trial court erred by expanding its order to close the files of all investigative agencies, including the legislative audit, until after Clark's trial. The appellant formally requested access to the state police investigative file, and there was no discussion of other investigative files at the hearing on July 12. The trial court entered its order on July 13 stating:

> Therefore, it is the order of this Court that the investigative file regarding this defendant be closed and not made public and that the Prosecuting Attorney, all investigative agencies, including the Arkansas State Police, and Legislative Audit, close their files to the public and that they remain closed until a trial on the merits of this matter has been held.

The appellants filed their petition to modify, asking the court to modify its order to conform to the action actually announced at the hearing on their petition for review on July 12. They contended at the hearing on their petition to modify that the

court's order was much broader than the court's ruling from the bench. Evidence was adduced at the hearing on the appellants' petition to modify which established that the state police had shared their investigative file with the auditors who were preparing their own investigation and audit of Clark.

I would hold the trial court's denial of the appellants' petition to modify was proper and its order of July 13 was not impermissibly overbroad. The trial court's action in effect granted Clark's motion to seal all records relevant to his trial. This was necessitated in part by the joint investigation of both the Arkansas State Police and the legislative auditors, and I cannot say the trial court erred.

TOM GLAZE, Justice, dissenting. The majority opinion is overbroad in its attempt to protect a defendant's right to fair trial, and will serve as dangerous precedent to subvert first amendment and FOIA rights which were never intended to be limited under the Supreme Court cases relied upon by the majority. The majority cites *Gannett v. DePasquale*, 443 U.S. 368 (1979), for the proposition that a trial judge has an affirmative duty to minimize the effects of prejudicial, pretrial publicity, and may take protective measures even when they are not strictly and inescapably necessary. While the proposition is true, the *Gannett* case dealt with the issue of excluding the press and public from a pretrial hearing and did not involve the press's or public's right to access public records from sources outside a court proceeding. Here, the trial court not only barred the appellants' right to view investigative police files compiled in connection with Mr. Clark's case, it also effectively restrained them from receiving state legislative audit documents that are unquestionably public information, except for the trial court's order providing otherwise.

The danger in the majority's decision lies in the fact that public documents available to any citizen or member of the press can be made private and secret, thus cutting off the people's right to further scrutinize and evaluate their public officials' performance. Ironically, such public documents (expense vouchers) and their publication are what led to the criminal charge having been filed against Mr. Clark in the first place. If the public and press can be prevented from accessing public records from governmental agencies merely because a police department or law enforce-

ment agency makes those records a part of its investigation, the peoples' ability to know what is going on in their government is seriously curtailed.

The Supreme Court has said that pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial. *Nebraska Press Ass'n* v. *Stuart*, 427 U.S. 539, 565 (1976). The decided cases "cannot be made to stand for the proposition that juror exposure to information about news accounts of the crime alone with which a defendant is charged presumptively deprives the defendant of due process." *Id*. Appellate evaluations as to the impact of publicity take into account what other measures were used to mitigate the adverse effects of publicity. *Id*.

In the present case, the trial court appropriately considered Mr. Clark's rights to a fair trial, but, in reviewing the record, I find no evidence or findings to justify the court's broad protective order closing the files of the State Legislative Auditor. The trial court not only prevented appellants from obtaining the Legislative Auditor's report of Mr. Clark's office expenditures, it also closed them until he had a trial.

The Supreme Court has noted there are measures that may insure a defendant of a fair trial and has approved certain alternatives to the prior restraints of publication that include such measures as a change of trial venue, postponement of the trial, searching questioning of prospective jurors, sequestration of jurors — to name a few. *See Stuart*, 427 U.S. at 563, 564. A heavy burden exists in demonstrating, in advance of trial, that without prior restraint a fair trial will be denied. *Stuart*, 427 U.S. at 569.

The majority court fails to mention or quote from the record where the trial court ever considered evidence and made findings that could justify sealing public documents, such as those generated by the Legislative Auditor in this matter. Nor can I find where the trial court made findings that other alternatives were considered short of removing access to, and thereby preventing the publication of, such documents by the appellants. At the very least, the Legislative Audit report and its underlying documents should have been available when the Clark trial commenced, since, at that point, the trial court by various

measures could limit the jurors' exposure to publicity and limit, as well, what the contending lawyers, police and witnesses may say to anyone. *See Stuart*, 427 U.S. at 563, 564.

In conclusion, while I am aware this matter appears moot since the Clark trial has been completed, I believe this court should hold the trial court's order was overbroad and was not supported by a proper analysis or findings. Admittedly, the press's right of access to certain information is not absolute and must be balanced against a defendant's sixth amendment right to fair trial. However, I am convinced that when public records or documents are sought to be closed, a defendant, especially a public official, faces a greater burden when trying to show his or her right to a fair trial might be impaired by the release of those documents. Regardless, certain tests must be satisfied to justify abrogating the right of access by examining evidence before the trial judge when the protective order was entered, *viz.*, (1) whether intense and pervasive pretrial publicity would or might impair the defendant's right to a fair trial; (2) whether other alternatives or measures to closure would insure the defendant a fair trial; and (3) whether closure will be effective in protecting the defendant's right to fair trial. *See Stuart*, 427 U.S. at 562-567; *Seattle Times Co. v. U.S. District Court*, 845 F.2d 1513 (9th Cir. 1988). In the present case, the trial court failed to fully consider each of these tests and enter its findings. Accordingly, because the record fails in these significant respects, I believe the trial court erred in issuing its protective order. *See Arkansas Television Co. v. Tedder*, 281 Ark. 152, 662 S.W.2d 174 (1983).