Ms. Shayne King Human Resources Director City of Bryant 210 S.W. 3rd Street Bryant, Arkansas 72022
Dear Ms. King:
This is in response to one of a series of opinion requests you have made involving the release of employment records under the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§ 25-19-101 to -109 (Repl. 2002 and Supp. 2007). In this request, you seek my opinion under A.C.A. § 25-19-105(c)(3)(B) on the following facts:
On February 6, 2008, two (2) of the City's fire battalion chiefs were terminated for violating City policy which requires employees to accurately report hours worked on their timesheets. Letters of termination, enclosed, were issued to both. A couple of weeks later, they were reinstated to their former positions and the disciplinary action was changed from terminations to suspensions. A notation was placed in each firefighters' personnel file documenting the reinstatements and suspensions.
On Monday, the City received an FOIA request for the termination letters.
As custodian of the records, I have determined that the letters constitute job performance records, inasmuch as they were created at the City's behest and document the performance of the employees with respect to a specific incident. Although the City does not have any formal grievance process, there was a final administrative resolution of the terminations when the employees were reinstated and the disciplinary action was reduced to suspensions. The terminations received significant local media attention and were followed by a no confidence vote being issued against the chief of the fire department and well-publicized complaints against the fire chief being filed by the two employees. (See separate request for opinion sent contemporaneously today). However, given the fact that the terminations were subsequently changed to suspensions and the employees were reinstated, I have determined that no compelling public interest exists in the disclosure of these termination letters and that they should not be released.
I am writing pursuant to Ark. Code Ann. § 25-19-105(c)(3)(B)(i) to seek an opinion on whether my decision is consistent with the provisions of the Arkansas Freedom of Information Act. Specifically, 1) do the enclosed letters constitute a [sic] performance records? and 2) whether there is a compelling public interest in their disclosure?
RESPONSE
In my opinion your decision is inconsistent with the FOIA. As an initial matter, your conclusion that the termination letters are "job performance records" is consistent with the FOIA, in my opinion. In my judgment, however, the facts you present reflect a compelling public interest in disclosure. The fact that the terminations were reduced to suspensions does not lessen the "compelling public interest prong" of the A.C.A. § 25-19-105(c)(1) test. The employees were nonetheless suspended for purposes of applying the A.C.A. § 25-19-105(c)(1) exemption. Assuming the termination letters "formed a basis" for the ultimate suspension decision for purposes of that prong of the A.C.A. § 25-19-105(c)(1) test, in my opinion the letters are subject to inspection and copying under the FOIA.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
"Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2005).
Given that the records are kept by the City, were written by a city official, and the subject matter involves the termination of city employees, I believe the documents in question clearly qualify as "public records" under this definition.
As one of my predecessors noted in Op. Att'y Gen. 99-305: "If records fit within the definition of `public records'. . ., they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law." See also, Nabholz Construction v. Contractors for Public Protection Association (Ark.Sup.Ct. 07-843, Nov. 1, 2007) (stating that "We have held that for a record to be subject to the FOIA and available to the public, it must be (1) possessed by an entity covered by the Act, (2) fall within the Act's definition of a public record, and (3) not be exempted by the Act or other statutes"). See also, Arkansas Gazette Company v. Goodwin, 304 Ark. 204, 801 S.W.2d 284 (1990); and Legislative Joint Auditing Comm. v. Woosley, 291 Ark. 89, 722 S.W.2d 581
(1987).
The relevant exemptions in this instance are the ones for "personnel records" (A.C.A. § 25-19-105(b)(12)) and "employee evaluation or job performance records" (A.C.A. § 25-19-105(c)(1)). It is important to classify the termination letters properly because the test for release under these two exemptions differs. With regard to classification of "termination letters," I recently stated:
I agree with one of my predecessors' that "a dismissal or termination letter that contains the reasons for the termination is an employee evaluation or job performance record for purposes of the FOIA." Op. Att'y Gen. 2006-026 (citing Ops. Att'y Gen. 1995-171; 92-191; and 88-97). If, however, such a letter does no more than reflect the fact of termination, without elaboration, in my opinion it is properly classified as a "personnel record" under A.C.A. § 25-19-105(b)(12) and is subject to release under the test for release of that category of records. See, e.g., Op. Att'y Gen. 2006-147.
Op. Att'y Gen. 2007-323 at 3.
In this instance, the termination letters contain the reasons for the terminations. In my opinion, therefore, you have properly concluded that they are "employee evaluation or job performance records" for purposes of the FOIA. "Employee evaluation or job performance records" are releasable under A.C.A. § 25-19-105(c)(1) only if the following three conditions have been met:
1. There has been a final administrative resolution of any suspension or termination proceeding;
2. The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
3. There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1) (Supp. 2007). Employee evaluation or job performance records cannot be released unless each prong of this test has been met.
With regard to the first prong, "final administrative resolution of any suspension or termination proceeding," you state that the employees in question were initially terminated (as evidenced by the letters in question), but that they "were reinstated and the disciplinary action was reduced to suspensions." You characterize this action as a "final administrative resolution of the terminations. . . ." It might be more appropriate to characterize it as "final administrative resolutions" of the suspensions. The officers in question were finally "suspended," not terminated. In any event, a final suspension is an event meeting the first prong of the test set out above.
The second prong is whether the records in question "formed a basis" for the decision to suspend the employees. You have not mentioned this prong in your request, but I assume that it is your conclusion that the records in question, although taking the form of "termination" letters, in fact "formed a basis" for the decision to suspend the employees. The issue of whether requested records "formed a basis" for suspension is generally interpreted to mean that the records in question reflect or detail the incidents or conduct that led to the suspension. Op. Att'y Gen. Nos. 2002-158 and 2001-144. If that is the case, then this prong of the test has also been met. See, e.g., Op. Att'y Gen. 2008-049 (stating that "To the extent the custodian has determined as a factual matter, that . . . documents "form[ed] a basis" for the suspension decision (and/or the reversal of the Mayor's termination decision), this prong of the above test has been met"); and Op. Att'y Gen. 2001-369 (upholding the release of internal investigative records concerning a police officer who was terminated and reinstated with a thirty-day suspension, stating that "[t]he investigation records seemed to form a basis for that suspension").
The final prong of the test for release of employee evaluation or job performance records is that there is a "compelling public interest" in their disclosure. The FOIA at no point defines the phrase "compelling public interest" as used in the final prong of the A.C.A. §25-19-105(c)(1) test. However, two leading commentators on the FOIA, referring to this office's opinions on this issue, have offered the following guidelines:
[I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the "compelling public interest" requirement.
Watkins Peltz, The Arkansas Freedom of Information Act (4th ed. m m Press, 2004) at 207 (footnotes omitted). With regard to the third factor, Professors Watkins and Peltz note that "the status of the employee" or "his rank within the bureaucratic hierarchy" may be relevant in determining whether a "compelling public interest" exists. Id. at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.") They have also noted, however, that "[i]n some cases, . . . rank is unrelated to importance" — a proposition they illustrate by suggesting that "[t]he public has a great interest in the performance of police officers and other law enforcement officials, and in this case the `cop on the beat' is just as important as the chief of police." Id. at 207.
In my opinion the three factor-test set out above is properly applied to determine whether a "compelling public interest" exists with regard to the termination letters about which you have inquired.
With regard to the first factor outlined above (the nature of the infraction), I and my predecessors have concluded that ". . . there is a compelling public interest in the disclosure of documents that detail violations of "administrative rules and policies aimed at conduct which could undermine the public trust and/or compromise public safety." Ops. Att'y Gen. 2008-004; 2006-106; 2005-175; and 1997-400. My predecessor has stated, however, and I agree that:
. . . it is too formulaic to suggest that "only those disciplinary actions involving the use/possession of drugs, arrests and/or convictions, [and] violation of rules involving safety, fall within the `compelling public interest' area and should be released." To be sure, this office has repeatedly opined that, in particular instances, a compelling public interest exists in the disclosure of documents containing information falling within these categories. See, e.g., Ark. Ops. Att'y Gen. Nos. 2001-144 (use/possession of drugs); 2003-257, 97-190 and 97-177 (arrests and/or convictions); 2003-072, 2001-343, 98-210, 98-075, 97-400 and 92-319 (violation of rules involving safety). However, neither I nor any of my predecessors has opined that only these categories of information could give rise to a compelling public interest in disclosure.
* * *
In some cases, this inquiry should be quite straightforward, as in instances of criminal or official conduct that manifestly threatens public safety. In other cases, the inquiry might be more nuanced, as in instances of misconduct that does not directly implicate the public welfare. In the latter category of cases, the factual context in which a violation occurs might prove of paramount importance in determining whether a compelling public interest in disclosure exists. See, e.g., Ark. Op. Att'y Gen. No. 2003-072 (opining that when there had been considerable public debate about the performance of a department of code inspection, a compelling public interest existed in the disclosure of documents revealing that inspectors engaged in a practice of taking breaks longer than authorized by department policy).
Op. Att'y Gen. 2005-175 at 4, 6.
The nature of the infraction for which the two battalion chiefs were originally terminated involved a violation of City policy. You have stated as much and the termination letters reflect this fact. You have noted the "significant media attention" and "well-publicized complaints" filed by the two employees against the Fire Chief after the terminations. Although the nature of the infraction in this instance, as you have characterized it, may not be one normally thought of as being central to public safety, it may be described as involving a breach of the "public trust," and the factual context surrounding the events lend added heft to the infraction in determining the existence of a "compelling public interest."
The second factor noted by the commentators above is the existence of a "public controversy" related to the agency and its employees. As my predecessor noted in Op. Att'y Gen. 2006-147, quoting Watkins and Peltz, supra "if the issue is debated publicly and has foreseeable and substantial ramifications for those who are not direct participants, it is a public controversy." Id. at 206. See also, Op. Att'y Gen. 2006-147. The facts you recite in your request, along with the facts recited in your other multiple requests for my opinion on related issues, clearly meet this standard.
The final factor cited above to determine whether a "compelling public interest" exists is the "the employee's position within the agency" or "his rank within the bureaucratic hierarchy." You state that the two employees in question are "battalion chiefs," whom you describe as being "third in the chain of command at the fire department, after the chief and assistant chief." My predecessor addressed a similar issue in Op. Att'y Gen. 2005-175, as follows:
. . . given the hierarchy you have recited, I will note that the positions of Battalion Chief and Captain can hardly be described as "lower-rank." Moreover, in my opinion, firefighters constitute a category of public servant very similar to policemen in terms of their direct importance to the general public. In Ark. Op. Att'y Gen. No.2005-162, citing J. Watkins R. Peltz, supra at 207, I opined that a police officer's rank might in certain instances be unrelated to the public interest in the disclosure of documents relating to his conduct. I believe this same conclusion applies to firefighters.
Id. at 5.
In my opinion, therefore, weighing all of the above factors, your determination that no "compelling public interest" exists in the release of these records is inconsistent with the FOIA.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General