Ms. Shayne King Human Resources Director City of Bryant 210 S.W. 3rd Street Bryant, Arkansas 72022
Dear Ms. King:
This is in response to the latest of a series of opinion requests you have made involving the release of employment records under the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§ 25-19-101 to -109 (Repl. 2002 and Supp. 2007). In this latest request, you seek my opinion under A.C.A. § 25-19-105(c)(3)(B) on the following facts:
In about February, 2008, the City began an investigation of two (2) of its fire battalion chiefs[1] after evidence[2] had surfaced which indicated that they were not accurately reporting their hours worked. The two battalion chiefs were interviewed; the interviews were taped-recorded and transcribed. The investigation resulted in both employees being terminated. However, approximately two weeks later, the employees were reinstated and the disciplinary action was changed from terminations to suspensions. Notations regarding the reinstatements and suspensions were placed in each employee's personnel file.
On Monday, the City received a FOIA request for the investigative file, enclosed, which led to the terminations.
As custodian of records, I have determined that the documents contained in the file constitute job performance records, inasmuch as they were created at the City's behest, document the performance of the employees with respect to a specific incident, and led to the termination then suspension of two employees. Although the City does not have any formal appeal or grievance process, there was a final administrative resolution of the terminations when the employees were reinstated and the disciplinary action was reduced to suspensions. The terminations and suspensions received significant local media attention and were followed by a "no confidence" vote being issued against the chief of the fire department. Additionally, after being reinstated, both employees then filed well-publicized complaints against the fire chief. (See separate request for opinion sent contemporaneously today). For this reason, I have determined that a compelling public interest exists in the disclosure of this investigative file and that the records contained in said file should be released.
I am writing pursuant to Ark. Code Ann. § 25-19-105 (c)(3)(B)(i) to seek an opinion on whether my decision is consistent with the provisions of the Arkansas Freedom of Information Act. Specifically: 1) do the documents contained in the enclosed file constitute performance records? and 2) whether there is a compelling public interest in their disclosure?
RESPONSE
In my opinion, your decision to release the records enclosed with your request is consistent with the FOIA, except that certain of the documents constitute "personnel records" rather than "job performance records." Specifically, the termination letters, "Field Notes" and transcriptions of interviews constitute "job performance records," whereas in my opinion the "2008 Shift Roster," "Shift Seniority" lists, "Employee Time Sheets," and Absence/Extra Hours Report" are personnel records. In my opinion, the test for the release of both types of records is met in this instance. With regard, specifically, to the termination letters, please see Op. Att'y Gen. 2008-065, recently issued to you, wherein I concluded that these letters are "job performance records" and are subject to release, assuming that they "formed a basis" for the ultimate suspension decision. I will not repeat the analysis, but instead refer you to Opinion 2008-065 regarding those letters. Additionally, some mention should be made of the address information contained in the records entitled "Bryant Fire/Rescue Run Log." These appear to be dispatch records, which are generally subject to disclosure as non-exempt public records. See, e.g., Op. Att'y Gen. Nos. 2002-064
and 93-106. However, a separate exemption for "subscriber information" obtained through a 911 system can sometimes come into play with respect to such dispatch records because fire department records can conceivably include this otherwise exempt information.[3] See Op. Att'y Gen. Nos.2002-064 and 95-232 (regarding the release of 911 addresses to a rural fire department). I do not know whether the addresses listed in the "Run Log" records at issue constitute "subscriber information," but if so, this information should be redacted prior to the records' release, in compliance with A.C.A. § 12-10-317.
DISCUSSION:
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
"Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2005).
Given that the records are kept by the City, were written by a city official and pertain to city employees, I believe the documents in question clearly qualify as "public records" under this definition.
As one of my predecessors noted in Op. Att'y Gen. 99-305: "If records fit within the definition of `public records'. . ., they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law." See also, Nabholz Construction v. Contractors for Public Protection Association (Ark.Sup.Ct. 07-843, Nov. 1, 2007) (stating that "We have held that for a record to be subject to the FOIA and available to the public, it must be (1) possessed by an entity covered by the Act, (2) fall within the Act's definition of a public record, and (3) not be exempted by the Act or other statutes"). See also, Arkansas Gazette Company v. Goodwin, 304 Ark. 204, 801 S.W.2d 284 (1990); and Legislative Joint Auditing Comm. v. Woosley, 291 Ark. 89, 722 S.W.2d 581
(1987).
As indicated above, of the records that you enclosed with your request, those entitled "Bryant Fire/Rescue Run Log" do not fall within any exemption, with the possible exception of the addresses listed therein. As for the remaining records, in my opinion the relevant exemptions are the ones for "personnel records" (A.C.A. §25-19-105(b)(12)) and "employee evaluation or job performance records" (A.C.A. § 25-19-105(c)(1)). It is important to classify the records properly because the test for release under these two exemptions differs.
In my opinion, the "Field Notes" and transcriptions of interviews constitute "job performance records," consistent with previous opinions of this office to the effect that records that were created at the behest of an employer and that detail the performance or lack of performance of an employee with regard to a specific incident or incidents are properly classified as such. See, e.g., Op. Att'y Gen.2007-206 (and opinions cited therein). This includes records in an internal affairs file that have been generated at the behest of the employer in the course of investigating an employee's conduct. See, e.g., Op. Att'y Gen. 2007-311. "Employee evaluation or job performance records" are releasable under A.C.A. § 25-19-105(c)(1) only if the following three conditions have been met:
1. There has been a final administrative resolution of any suspension or termination proceeding;
2. The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
3. There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1) (Supp. 2007). Employee evaluation or job performance records cannot be released unless each prong of this test has been met.
Regarding the records in question, the first part of the test is clearly met as there has been a final suspension. See Op. Att'y Gen.2008-065. Regarding the second prong ("formed a basis"), although you have not specifically mentioned this part of the test, I assume as a factual matter that it is met as well with regard to the "Field Notes" and interview transcriptions. See id. Finally, for the reasons explained in Opinion 2008-065 when weighing all of the relevant factors that bear on the third prong of the test in this particular instance, I believe there is a "compelling public interest" in the release of these "Field Notes" and interview transcriptions. I refer you to Opinion 2008-065 for a thorough discussion of the basis for that conclusion. In my opinion, therefore, your determination that this part of the investigative file should be released pursuant to subsection 25-19-105(c)(3)(B)(i) is consistent with the FOIA.
It is my further opinion that you have properly decided to release the "2008 Shift Roster," "Shift Seniority" lists, "Employee Time Sheets" and "Absence/Extra Hours Report," but in my opinion these records must be evaluated under the test for "personnel records" rather than "employee evaluation or job performance records." The FOIA does not define "personnel records," but this office has consistently taken the position that "personnel records" are all records other than "employee evaluation and job performance records" that pertain to individual employees. See, e.g., Op. Att'y Gen. 2006-035 (and opinions cited therein). Additionally, and of particular relevance in this instance regarding the shift documents and time sheets, records such as these that relate to an internal investigation, but that were not generated at the behest of the employer in the course of investigating an employee, are not job performance or evaluation records. See generally Op. Att'y Gen. Nos.2007-313 and 2003-313. Rather, these documents instead constitute "personnel records" of the named employees.
"Personnel records" are generally open to inspection and copying, except to the extent that their release would constitute a "clearly unwarranted invasion of personal privacy." A.C.A. § 26-19-105(b)(12) (Supp. 2007). This requires application of a balancing test that essentially involves weighing the interests of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). The public's interest will ordinarily outweigh the individual's interest if the public's interest is substantial, id., or even if it is modest, unless the privacy interest is substantially heightened. See Op. Att'y Gen. 2002-087. Disclosure will also generally be required under this balancing test if the public interest and the privacy interest are both minimal because the balance is tipped in favor of disclosure under the "clearly unwarranted" test. Id. If there is little public interest in the information, however, the privacy interest will prevail if it is not insubstantial. Stilley v. McBride, 332 Ark. 306, 965 S.W.2d 125 (1998).
Applying this test, I conclude that the 2008 Shift Roster," "Shift Seniority" lists, "Employee Time Sheets" and "Absence/Extra Hours Report" are subject to release, consistent with previous opinions of this office concerning similar records that document shift information pertaining to employees, the number of hours worked, and employee leave information. See, e.g., Op. Att'y Gen. Nos. 2005-114 and 2002-064 (shift sheets); 2007-323 and 2005-057 (time sheets); 2007-258 (leave sheets). The public interest in this type of information is substantial and any potential privacy interest does not outweigh it, in my opinion.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The battalion chiefs are third in the chain of command at the fire department, after the chief and assistant chief.
[2] This evidence was brought to the attention of the undersigned Human Resources Director by the fire chief.
[3] This office has opined that "subscriber information" includes the telephone number and address of any telephone used to make a 911 call, and probably other information such as the name of the subscriber, to the extent such other information actually is forwarded by a service provider to a public safety answering point pursuant to A.C.A. §12-10-317(a)(1). See Op. Att'y Gen. 2002-064 (and opinions cited therein). *Page 1