Mr. W. Kelvin Wyrick Attorney at Law 610 Laurel Street Post Office Box 23 Texarkana, Arkansas 71854-0023
Dear Mr. Wyrick:
I am writing in response to your request, made pursuant to A.C.A. §25-19-105(c)(3)(B), for an opinion on whether the custodian of records at the Arkansas State Police has correctly determined to release certain documents relating to your client's employment with that agency under the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§ 25-19-101 — 109 (Repl. 2002) and (Supp. 2007). Your client is a Captain with Troop G of the Arkansas State Police. Specifically, correspondence enclosed with your request indicates that the following records were requested under the FOIA: "1) Letter of reprimand referred to in the Nevada County Picayune dated September 8, 2008; 2) Complaint letter from [the former Nevada County Sheriff], detailing [your client's] actions for which he was reprimanded; 3) Official documentation of the Commissions [sic] decision regarding [your client's] employment disposition."
The custodian of records at the Arkansas State Police has determined that one record is subject to inspection and copying in response to this request, and has enclosed that record for my review. The document is an "Order" of the Arkansas State Police Commission issued after the conclusion of an administrative appeal process before that body. The custodian has determined that the record is subject to release based upon the following factors:
The record is an official order created during an open administrative appeal process before the Arkansas State Police Commission.
The record was crafted during an open meeting of the Arkansas State Police Commission convened to hear [your client's ] . . . appeal . . . for reinstatement to his position of troop commander of the Arkansas State Police.
While a copy of the order was directed to be placed in the personnel file of [your client], the order is also mirrored verbatim in the minutes of the Arkansas State Police Commission.
And, the order represents a final affirmative job action, specifically overturning the termination of [your client] and reinstating him to his previous position with the department, but suspending him for a period of six months based on witness testimony during the administrative hearing.
You state that you and your client are "adamantly opposed" to the release of this information. You state your conclusion that any responsive records would be properly classified as "employee evaluation or job performance records" for purposes of the FOIA, which may only be released if certain conditions are met, specifically: 1) that there has been a final administrative resolution of a suspension or termination proceeding; 2) where the records formed a basis for the decision to suspend or terminate the employee; and 3) a compelling public interest in disclosure of the records exists. You state in this instance that "there is no compelling public interest in the disclosure of any of [your client's] personnel records" and that "[t]he public has been completely informed of the termination . . . in March 1999 and subsequent reinstatement." You refer to recent published news reports in this regard. You also state that "[t]he only reason the requesting party wants to see this file is for political reasons" and that "this person does not work for a newspaper." Finally, you state that ". . . there should be a statute of limitations on this type of request since this matter was over nine years ago."
My statutory duty under A.C.A. § 25-19-105(c)(3)(B) is to state whether the custodian's decision is consistent with the FOIA.
RESPONSE
In my opinion the custodian's decision is generally consistent with the FOIA. In my opinion, however, it may be necessary to redact the names of non-employees appearing in the record in light of the constitutional right to privacy discussed in McCambridge v. City of Little Rock,298 Ark. 219, 766 S.W.2d 909 (1989).
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2007).
Given that the record in question is kept by a state agency and the subject matter involves employment status of a state employee, I believe the document clearly qualifies as a "public record" under this definition.
As one of my predecessors noted in Op. Att'y Gen. 99-305: "If records fit within the definition of `public records' . . ., they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law." See also, Nabholz Construction v. Contractors for Public Protection Association (Ark.Sup.Ct. 07-843, Nov. 1, 2007) (stating that "We have held that for a record to be subject to the FOIA and available to the public, it must be (1) possessed by an entity covered by the Act, (2) fall within the Act's definition of a public record, and (3) not be exempted by the Act or other statutes"). See also, Arkansas Gazette Company v. Goodwin, 304 Ark. 204, 801 S.W.2d 284 (1990); and Legislative Joint Auditing Comm. v. Woosley, 291 Ark. 89, 722 S.W.2d 581
(1987).
At this point, it may be helpful to address the custodian's conclusions that the record in question is open to public inspection because it "is an official order created during an open administrative appeals process," that it was "crafted during an open meeting of the Arkansas State Police Commission" and that the order is "mirrored verbatim in the minutes of the Arkansas State Police Commission." In my opinion, these conclusions of the custodian do not control the public nature of the document in question. As stated in Watkins and Peltz, The Arkansas Freedom of Information Act (4th Ed. mm Press 2004):
 The availability under the FOIA of documents reviewed by a governing body at an open meeting or in an executive session is determined by the nature of the record rather than by the nature of the meeting. In a 1983 opinion, for example, the Attorney General concluded that a record considered in executive session is nonetheless available for public inspection and copying under the FOIA unless the record falls within an exemption.[1] Conversely, the Attorney General ruled in 1987 that employee evaluation records considered in an executive session held pursuant to the personnel exception were exempt from disclosure under Section 25-19-105(c)(1) of the FOIA.[2] The same result would follow even if the meetings were open to the public, for the question is whether the record is exempt from disclosure under the FOIA or another statute. As the Attorney General noted in a 1988 opinion, records presented to a school board in an open meeting "should be shielded from public review" if they "fall into one of the exempt categories."[3] This interpretation is undoubtedly correct. . . .
Id. at 333.
In my opinion, therefore, "the discussion of a document in a public meeting" does not "bear upon its `public' status." Op. Att'y Gen.93-002. As stated in Op. Att'y Gen. 93-002, "[d]ocuments in the possession of an agency subject to the FOIA which constitute a record of the performance or lack of performance of official functions of the agency are . . . subject to disclosure under the Act unless exempt." Id. at 2.
The relevant exemption in this instance is, as you note, the one for "employee evaluation or job performance records" (A.C.A. §25-19-105(c)(1) (Supp. 2007). This office has consistently taken the position that any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. See, e.g., Ops. Att'y Gen. 2008-004; 2006-038; 2006-035; 2005-030; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; and 93-055.
Records notifying employees of disciplinary action and stating the reasons therefore are generally "employee evaluation or job performance records for purposes of the FOIA. See, e.g., Op. Att'y Gen. 2003-072
(letters notifying the two employees of their suspension constitute "employee evaluation/job performance records," within the meaning of the FOIA); Op. Att'y Gen. 2003-257 (memo notifying the police officer of his suspension is properly classified as an "employee evaluation/job performance record" within the meaning of the FOIA); and Op. Att'y Gen.2000-267 (letter notifying police officer of his suspension did not constitute an employee evaluation/job performance record where it did not detail any incidents that gave rise to the suspension, but was instead properly classified as a "personnel record" for purposes of the A.C.A. § 25-19-105(b)(12) exemption).
In my opinion the order of the Arkansas State Police Commission submitted for my review is an "employee evaluation or job performance record" in accordance with the rule stated above.
"Employee evaluation or job performance records" are releasable under A.C.A. § 25-19-105(c)(1) only if the following three conditions have been met:
 1. There has been a final administrative resolution of any suspension or termination proceeding;
 2. The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 3. There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1) (Supp. 2007). Employee evaluation or job performance records cannot be released unless each prong of this test has been met.
With regard to the first prong, "final administrative resolution of any suspension or termination proceeding," you refer to your client's "termination . . . and subsequent reinstatement." Correspondence sent to this office from the custodian, and stating his decision in this regard, indicates that there may have been a final suspension in connection with the administrative appeal and reinstatement. If so, the first prong of the test for release of "employee evaluation or job performance records" has been met. See, e.g., Op. Att'y Gen. 2008-065 (termination letters of two firefighters were subject to inspection and copying under the FOIA, where terminations were reduced to suspensions, records formed a basis for the suspensions, and there was a compelling public interest in disclosure).
The second prong is whether the records in question "formed a basis" for the decision to suspend the employee. The issue of whether requested records "formed a basis" for suspension is generally interpreted to mean that the records in question reflect or detail the incidents or conduct that led to the suspension. Op. Att'y Gen. Nos. 2002-158 and 2001-144. That appears to be the case with regard to the order in question. See Op. Att'y Gen. 2001-369 (upholding the release of internal investigative records concerning a police officer who was terminated and reinstated with a thirty-day suspension, stating that "[t]he investigation records seemed to form a basis for that suspension").
The final prong of the test for release of employee evaluation or job performance records, and the one you assert is not present with regard to the release of your client's records, is that there be a "compelling public interest" in their disclosure. The FOIA at no point defines the phrase "compelling public interest" as used in the final prong of the A.C.A. § 25-19-105(c)(1) test. However, two leading commentators on the FOIA, referring to this office's opinions on this issue, have offered the following guidelines:
 [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the "compelling public interest" requirement.
Watkins Peltz, The Arkansas Freedom of Information Act (4th ed. mm Press, 2004) at 207 (footnotes omitted).
With regard to the first factor outlined above (the nature of the infraction), I and my predecessors have concluded that ". . . there is a compelling public interest in the disclosure of documents that detail violations of "administrative rules and policies aimed at conduct which could undermine the public trust and/or compromise public safety." Ops. Att'y Gen. 2008-004; 2006-106; 2005-175; and 1997-400. My predecessor has stated, however, and I agree that:
 . . . it is too formulaic to suggest that "only those disciplinary actions involving the use/possession of drugs, arrests and/or convictions, [and] violation of rules involving safety, fall within the `compelling public interest' area and should be released." To be sure, this office has repeatedly opined that, in particular instances, a compelling public interest exists in the disclosure of documents containing information falling within these categories. See, e.g., Ark. Ops. Att'y Gen. Nos. 2001-144 (use/possession of drugs); 2003-257, 97-190 and 97-177 (arrests and/or convictions); 2003-072, 2001-343, 98-210, 98-075, 97-400 and 92-319 (violation of rules involving safety). However, neither I nor any of my predecessors has opined that only these categories of information could give rise to a compelling public interest in disclosure.
 * * *
 In some cases, this inquiry should be quite straightforward, as in instances of criminal or official conduct that manifestly threatens public safety. In other cases, the inquiry might be more nuanced, as in instances of misconduct that does not directly implicate the public welfare. In the latter category of cases, the factual context in which a violation occurs might prove of paramount importance in determining whether a compelling public interest in disclosure exists .
Op. Att'y Gen. 2005-175 at 4, 6.
The second factor noted by the commentators above is the existence of a "public controversy" related to the agency and its employees. As my predecessor noted in Op. Att'y Gen. 2006-147, quoting Watkins and Peltz, supra "if the issue is debated publicly and has foreseeable and substantial ramifications for those who are not direct participants, it is a public controversy." Id. at 206. See also, Op. Att'y Gen. 2006-147.
The final factor cited above to determine whether a "compelling public interest" exists is the "the employee's position within the agency" or "his rank within the bureaucratic hierarchy." With regard to the third factor, Professors Watkins and Peltz note that "the status of the employee" or "his rank within the bureaucratic hierarchy" may be relevant in determining whether a "compelling public interest" exists. Id. at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.") They have also noted, however, that "[i]n some cases, . . . rank is unrelated to importance" — a proposition they illustrate by suggesting that "[t]he public has a great interest in the performance of police officers and other law enforcement officials, and in this case the `cop on the beat' is just as important as the chief of police." Id. at 207.
Although it is a question of fact in each instance, I cannot conclude, weighing all the above factors, that the custodian's decision that the document is subject to release under the "compelling public interest" prong is inconsistent with the FOIA. Your client is a high-ranking law enforcement officer. As stated above, therefore, the public has a great interest in the job performance of such officials and the infractions they commit in the course of their employment. In addition, correspondence enclosed with your request indicates that your client is currently running for the office of County Sheriff. As one of my predecessors concluded in Op. Att'y Gen. 2002-067, in addressing the "personnel records" exemption, the public's interest in the employment records of a former Arkansas State Police employee who is running for county sheriff is substantial, "especially where [the employee] intend[s] to place [himself] in contention for a position of public trust." I cannot conclude, therefore, that the custodian's decision is inconsistent with the FOIA.
As to your assertions that "[t]he public has been completely informed of the termination . . . and subsequent reinstatement," referring to recently published newspaper accounts, in my opinion this fact does not diminish the compelling public interest in the documents, but, rather, is some evidence of a public controversy surrounding the matter. In response to your suggestion that the motive for the FOIA request in this instance is "for political reasons," I will again note the conclusion of my predecessor in Op. Att'y Gen. 2002-067 (distinguishing Stilley v. McBride, 332 Ark. 306, 965 S.W.2d 125 (1998) and declining to consider the alleged political campaign motive of FOIA requestor in determining whether to release a former state trooper's personnel records). See also Ops. Att'y Gen. 2006-142 ("the identity of the FOIA requester is not ordinarily pertinent to the analysis in applying the provisions of the FOIA"); and Op. Att'y Gen. 2002-087 ("[T]he long-held view [is] that the motive of an FOIA requester is ordinarily irrelevant to the analysis"). In addition, access to records under the FOIA is not, as you suggest, restricted to persons who work for newspapers. Access to public records under the FOIA is not restricted to members of the media, but is afforded to all citizens of Arkansas. A.C.A. § 25-19-105(a)(1)(A) (Supp. 2007). See also, A.C.A. § 25-19-102 (Repl. 2002) ("It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this chapter is adopted, making it possible for them or their representatives to learn and to report fully the activities of their public officials.") (Emphasis added.) Finally, with regard to your suggestion that "there should be a statute of limitations on this type of request," I can only echo the conclusion of another of my predecessors in Op. Att'y Gen.87-415, to the effect that "[a]s long as a record continues to be maintained in a public office or by public employees, the record is subject to the inspection and copying provisions of the FOIA."
In my opinion, therefore, for all the foregoing reasons, the ultimate conclusion of the custodian as to the public nature of the order in question is generally consistent with the FOIA. I must note as a final matter, however, that the names of non-employees contained in the record may be subject to redaction under the constitutional test set out in McCambridge v. City of Little Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). As I recently stated in Op. Att'y Gen. 2008-049, with regard to the names of non-employee citizens appearing in employee evaluation or job performance records:
 Additionally, in at least one record, the name of a citizen is apparently not an employee of the city is mentioned in the records. . . . As noted in Op. Att'y Gen 2008-044, this citizen could possibly have a constitutional privacy interest in such reference. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information. See McCambridge v. City of Little Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. It has been stated that:
 Only information that is extremely personal in nature is likely to satisfy the third prong of the McCambridge test. As the U.S. Court of Appeals for the Eighth Circuit has observed, the constitutional right to privacy extends "only to highly personal matters representing the most intimate aspects of human affairs." The information must be such that its disclosure would be "either a shocking degradation or an egregious humiliation of [the individual] to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information."
 Watkins Peltz, The Arkansas Freedom of Information Act, at 243-244 (footnotes omitted), quoting Eagle v. Morgan, 88 F.3d 620 (8th Cir. 1996); Alexander v. Peffer, 993 F.2d 1348 (8th Cir. 1993); citing Sheets v. Salt Lake County, 45 F.3d 1383 (10th Cir. 1995); and Walls v. City of Petersberg, 895 F.2d 188 (4th Cir. 1990).
Id. at 6.
As I also stated in Op. Att'y Gen. 2008-049:
 The question of whether information is protectable under the constitutional right of privacy is one of fact that must be determined in the first instance by the custodian of the records, on the basis of the facts of the case. If the custodian of the records determines factually that the records contain constitutionally protectable information (i.e., information that meets the three prongs of the test laid out by the McCambridge court), the custodian must then consider whether the governmental interest in disclosure under the FOIA (i.e., the public's legitimate interest in the matter) outweighs the privacy interest in their nondisclosure. Again, this determination will be a factual one, based upon the information available to the custodian. If it is determined factually that the privacy interest prevails, the name of this non-employee should be redacted before the records are released.
Id. at 6-7.
In my opinion, therefore, the custodian must apply the above constitutional test to determine whether to redact the name of the non-employee citizens contained in the records.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
DM:ECW/cyh
[1] Citing Inf. Op. Att'y Gen. (Martha Jo Nutt, June 7, 1983).
[2] Citing Op. Att'y Gen. 87-284.
[3] Citing Op. Att'y Gen. 88-082 and 93-002. *Page 1